# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JCM 082763, LLC,

       *Plaintiff,*

vs.

ANDY DETERDING, and
ANDY DETERDING AG AVIATION, INC.,
d/b/a ANDY DETERDING AG AVIATION

       *Defendants.*

Case No. 15-1167-EFM-GLR

## MEMORANDUM AND ORDER

Plaintiff JCM 082763, LLC ("JCM") is a limited liability company organized under Florida law that owns 640 "prime hunting" acres in Chataqua County, Kansas.  Individual Defendant Andy Deterding ("Deterding") is an Oklahoma resident and registered agent of Oklahoma-incorporated Defendant Andy Deterding Ag Aviation, Inc. ("Ag Aviation").[1] Generally, JCM alleges that Defendants recklessly scattered an herbicide across its Chataqua County property damaging the commercially valuable fauna of its "sportsman's paradise." Defendant Deterding now moves to dismiss JCM's complaint for lack of specific allegations demonstrating the Court's personal jurisdiction over him.  Alternatively, JCM moves to file an amended complaint that purportedly resolves any dispute concerning the Court's authority to

---

[1] "Defendants" in this Order collectively refers to Deterding and Ag Aviation.

exercise personal jurisdiction over Deterding.  For the reasons explained below, the Court denies Deterding's motion to dismiss and grants JCM leave to file its amended complaint.

## I.      Factual and Procedural Background[2]

Overlooking this matter's trees to view its forest, JCM's original and proposed pleadings both narrate the undoing of JCM's paradisiacal acreage.  Around June 2013, a pilot aerially applied herbicide to a target property that adjoins JCM's acreage.  The herbicide's label cautions users to avoid application during spray-drift conditions, because even a small, unobservable amount of the herbicide could seriously injure susceptible fauna.  The pilot's June 2013 application allegedly disregarded this warning and, consequently, affected nearly 20 acres of JCM's trees.  JCM's pleadings both seek to hold Defendants responsible for the pilot's erroneous application.  But JCM's proposed amended complaint seeks to do so by alleging unique, additional details.

By both accounts, Ag Aviation's corporate status was suspended at the time pesticides peppered JCM's Eden.  But the proposed amended complaint enriches that plain allegation. Specifically, the proposed amended complaint incorporates by reference a May 6, 2014 "Order Suspending Pesticide Business License" issued by the Kansas Department of Agriculture ("KDA") against Defendants.  JCM's proposed pleading alleges (as the KDA Order states in its second finding of fact) that the Oklahoma Secretary of State's Office listed Ag Aviation's corporate status as suspended on the date of the KDA Order.  If at all relevant to this motion, Ag Aviation's "suspended" corporate status matters only at the time Defendants allegedly harmed JCM and not roughly one year later when the KDA disciplined Defendants for violating Kansas'

---

[2] Drawing all reasonable inferences in JCM's favor, the Court takes the following facts from JCM's original complaint, proposed amended complaint, and other exhibits attached to the parties' briefs.

pesticide laws.[3]  So regarding Ag Aviation's corporate status, the KDA Order offers nothing to appreciate.  The broader fact that the KDA Order allegedly covers the June 2013 herbicide application that damaged JCM's land, however, matters.  And the proposed pleading's incorporation of those details is yet another feature setting off JCM's original allegations with new, more specific information.

But the most important difference between JCM's pleadings is that only the proposed amended pleading directly associates both Defendants with the alleged tort.  JCM's complaint points only to Ag Aviation as the outright wrongdoer responsible for turning JCM's paradise toward wasteland.  The complaint names both Defendants.  But it attributes the reckless herbicide application and related conduct only to Ag Aviation.  JCM's proposed amended complaint, however, variably points at both Deterding and Ag Aviation.  Allegedly, both Defendants were hired to spray property abutting JCM's acreage.  Both Defendants (through an unnamed pilot) recklessly sprayed roughly 20 acres of JCM's trees, causing damages exceeding $75,000.  And the KDA Order similarly attributes statutory violations for that application to both Deterding and Ag Aviation.  Apart from these shared actions, JCM also alleges actions attributable only to Deterding: Deterding owned a website that described Ag Aviation as a "family-owned and operated business" with three locations in Kansas; "Deterding's pilot" misapplied herbicide to JCM's property; and "Deterding is a serial violator" of Kansas' pesticide laws.

On these unfolding accounts the parties presently dispute the purview of the Court's personal jurisdiction power.

---

[3] Ag Aviation filed an answer to JCM's original complaint admitting that "at the time of [the alleged pesticide] application, its corporate status was suspended with the Oklahoma Secretary of State."

## II.    Legal Standard

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[4]   A plaintiff opposing a motion to dismiss based on lack of personal jurisdiction bears the burden of showing that jurisdiction over the defendant is appropriate.[5]   In a pretrial motion to dismiss, when the matter is decided on the basis of affidavits and written materials, the plaintiff is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[6]   Once the plaintiff makes a prima facie showing, the defendant must "present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.' "[7]

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[8]  "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[9]  " 'The plaintiff has the duty to support jurisdictional allegations in a

---

[4] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citation omitted).

[5] *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).

[6] *Id.*

[7] *Id.* (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

[8] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotations omitted).

[9] *Id.*

complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading.' "[10]

### III.     Analysis

#### A. Motion to Amend

At the outset, there should be no confusion that the Court's jurisdictional power to adjudicate Deterding's rights hinges on the viability of JCM's proposed amended complaint. The original complaint's only specific mention of "Andy Deterding" essentially concerns his status as Ag Aviation's registered agent for service of process and, impliedly, his Oklahoma citizenship. The complaint seemingly attributes all alleged activities occurring in or directed at Kansas to Ag Aviation, by way of associating Ag Aviation with the ambiguous identifier "Deterding."[11] These circumstances simply do not show the necessary ties to Kansas that would, consistent with the Due Process Clause, enable the Court to adjudicate (Andy) Deterding's rights.[12] JCM appears to concede the inadequacy of its original complaint—after all, rather than standing by the original complaint, JCM chose to respond to Deterding's dismissal motion by proposing an amended complaint. So as a threshold matter, the Court must satisfy itself that JCM legally deserves leave to amend.

---

[10] *Id.* at 1508 (quoting *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

[11] The confusion arises from this passage: "Defendants Andy Deterding and Andy Deterding Ag Aviation, Inc. d/b/a/ Andy Deterding Ag Aviation ("Deterding") is currently a for profit corporation, duly authorized and existing under the laws of the state of Oklahoma. . . .  Defendants may be served with process by service upon Andy Deterding. . . ."  The Court acknowledges the possibility that JCM unskillfully drafted this passage intending that the "Deterding" label refer to both Defendants. Given (1) the lack of any language indicating that JCM intended "Deterding" *collectively* to refer to both Defendants and (2) the same allegation's subsequent use of "Defendants" (referring to both Deterding and Ag Aviation) and "Andy Deterding" (referring only to Deterding ), the Court thinks it unreasonable to infer that the "Deterding" identifier immediately following Ag Aviation refers to both Defendants. So when the complaint later ascribes all tortious conduct to "Deterding," the Court reads those allegations to concern Ag Aviation.

[12] *See Walden*, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

"Absent flagrant abuse, bad faith, futility of amendment or truly inordinate and unexplained delay, prejudice to the opposing party is the key factor in deciding a motion to amend."[13]   In opposing JCM's motion to amend, Deterding makes no mention of abuse, bad faith, delay, or prejudice.  Instead, Deterding objects to amendment only because he believes that the amended complaint features the same defects fatal to the original complaint.  Because Deterding only raises futility of amendment in opposing JCM's request, the Court finds that JCM's request comports with Federal Rule of Civil Procedure 15(a)(2) in all other respects. With regard to futility, the Court must consider whether JCM's amended complaint includes adequate facts to survive Deterding's motion to dismiss for lack of personal jurisdiction.[14]

**B. Personal Jurisdiction**

Where, as here, a federal lawsuit is based on diversity of citizenship, the law of the forum state determines the Court's jurisdiction over a nonresident defendant.[15]   The party seeking to establish personal jurisdiction over a diverse litigant must make two showings.  First, it must show that jurisdiction is legitimate under the state's long-arm statute.  Second, it must show that jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment.[16]   The Kansas Supreme Court has interpreted Kansas' long-arm statute to extend jurisdiction to the

---

[13] *Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1307 (D. Kan. 2006).

[14] *See Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992).

[15] *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).

[16] *Kuenzle*, 102 F.3d at 455.

fullest extent allowed by the Due Process Clause of the Fourteenth Amendment.[17]  Thus, in this case, the Court need not conduct a statutory analysis apart from the due process analysis.[18]

The due process analysis involves a two-step inquiry.[19]  First, the Court asks whether plaintiff's allegations show that the non-resident defendant has "minimum contacts" with the forum state.[20]  A plaintiff forms minimum contacts, in short, if he purposefully avails himself of the protections or benefits of the forum's laws by conducting forum-directed activities.[21]  If the plaintiff successfully establishes such minimum contacts, the Court secondarily inquires—under the "reasonableness test"—whether defendant can prove that exercising jurisdiction would offend "traditional notions of fair play and substantial justice."[22]

The parties seem content to cite these principles without (thoroughly or otherwise) examining their particulars for the Court.  In fact, Deterding entirely ignores the "reasonableness test," making no assertion or argument that fair play and substantial justice forbids the Court from adjudicating his rights.  Deterding thus fails to present, as he must, "a compelling case" that the presence of some considerations would render jurisdiction constitutionally unreasonable.[23]  The Court is therefore left to discern only whether JCM alleges the constitutionally required minimum contacts between Deterding and Kansas.

---

[17] *Merriman v. Crompton Corp.*, 282 Kan. 433, 459, 146 P.3d 162, 179 (2006).

[18] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

[19] *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

[20] *Id.* (citation omitted).

[21] *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 109 (1987) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[22] *Id.* at 113; *see also AST Sports Sci., Inc.*, 514 F.3d at 1057.

[23] *Dudnikov v. Vermilion Fine Arts*, 514 F.3d 1063, 1080 (10th Cir. 2008) (quotation omitted).

The constitutional touchstone of the Due Process Clause is whether the defendant purposefully established minimum contacts in the forum state.[24]   The minimum contacts requirement assures a reasonable expectation in the out-of-state defendant that he might be brought into court in the forum state.[25]   This requirement ensures "that a defendant will not be subject to the laws of a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.' "[26]   To meet this standard, a plaintiff must show either general or specific jurisdiction.[27]   The character of a party's forum contacts determines whether general jurisdiction or specific jurisdiction exists. "Continuous and systematic" forum contacts would empower the Court, under general jurisdiction, to resolve any dispute involving the connected party.[28]   Alternatively, minimum forum contacts specifically related to the alleged dispute would empower the Court, under specific jurisdiction, to resolve the exact dispute involving the connected party.[29]   At no point does JCM indicate the type of personal jurisdiction that Deterding's contacts allegedly support. Because nearly all of the alleged contacts relate to the specifics of this dispute, however, the Court focuses on the availability of specific personal jurisdiction over Deterding.

[24] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citation omitted).

[25] *AST Sports Sci., Inc.*, 514 F.3d at 1057–58 (citing *Burger King Corp.*, 471 U.S. at 472).

[26] *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475).

[27] *OMI Holdings, Inc.*, 149 F.3d at 1090–91.

[28] *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citation omitted); *see also Walden*, 134 S. Ct. at 1121 n.6.

[29] *Walden*, 134 S. Ct. at 1121 n.6; *Newsome*, 722 at 1264.

JCM asserts a single tort claim against Defendants.  For tort claims, the relevant inquiry is whether the nonresident defendant "purposefully directed" his activities at the forum state.[30] The "purposeful direction" element requires: (a) intentional conduct (b) "expressly aimed at the forum state" and (c) "knowledge that the brunt of the injury would be felt in the forum state."[31] Neither party discusses these factors.  Instead, the parties dispute the character of the alleged, Kansas-directed conduct.  Deterding reads both complaints to omit any allegation that he *personally* performed *any* Kansas-directed act.  Stated otherwise, the parties do not directly discuss the elements of "purposeful direction" because they dispute whether the complaints allege that Deterding (1) performed any of the described acts and, if so, (2) that Deterding undertook such Kansas-directed activity in his personal capacity, rather than as Ag Aviation's agent.

As to the initial question, Deterding insists that JCM's proposed amended complaint "does not allege any wrongdoing by Mr. Deterding, separate from that alleged against Ag Aviation."  Deterding also disagrees with JCM's allegation that Deterding owns or controls the website promoting Ag Aviation.  Accordingly, Deterding argues that JCM fails to allege any acts that he, in fact, performed.  The Court reads the allegations differently.  Deterding's argument implies that personal jurisdiction contacts are a zero-sum calculation or, more accurately, that it is impossible to allege that multiple defendants partook in the same Kansas-directed misconduct.  Deterding provides no authority (and the Court has uncovered none) confirming the impossibility

---

[30] *Dudnikov*, 514 F.3d at 1071.

[31] *Newsome*, 722 F.3d at 1264–65.

of the scenario JCM alleges.[32]  What JCM's amended complaint describes is that "*Defendants* had been hired to spray" property abutting JCM's acreage; "*Defendants* sprayed. . . Plaintiff's property" through "*Deterding's* pilot;" and "*Defendants'* conduct was . . . . reckless."  That abridged account even overlooks JCM's allegation—which the Court must accept[33]—that "[*Deterding's*] website" characterizes Ag Aviation as a family-run business with locations in Kansas.  At some later moment, the Court may be in a position to scrutinize the truth of these allegations.  At this moment, however, the Court (as it must) takes JCM at its word that both Deterding and Ag Aviation intentionally involved themselves in the reckless pollution of JCM's Kansas property.

As to the remaining question, Deterding argues that he performed any alleged activity entirely as Ag Aviation's agent, and thus the Court must attribute the legal consequences of that activity only to Ag Aviation.  Considering that Ag Aviation's corporate status was suspended at the time of Defendants' tortious acts, JCM responds that Oklahoma law (Okla. Stat. Ann. tit. 68, § 1212(c)) makes Deterding personally liable for torts resulting from Ag Aviation's unauthorized business activity.  Deterding responds that § 1212(c)'s language is too narrow to make him, or any person, personally liability for the alleged Kansas tort.

Whether Oklahoma law makes certain agents personally liable for a suspended business' activities says nothing about Deterding's minimum contacts with Kansas.  To begin, like Deterding, the Court doubts that JCM's allegations satisfy the exception's prerequisite that partnership liability applies only when "debts of [a suspended] corporation . . . [are] created or

---

[32] Indeed, for purposes of personal jurisdiction, it is possible for an employee's acts to form the basis of both the employee's and the employer's forum contacts.  *See Calder v. Jones*, 465 U.S. 783, 785–86, 790 (1984); *Fotouhi v. Mobile RF Sols., Inc.*, 2015 WL 3397205, at *1–2 (D. Kan. May 26, 2015).

[33] *See Wenz*, 55 F.3d at 1505.

incurred with [the corporate officer's] knowledge, approval and consent, within [Oklahoma]."[34] More importantly, however, the proposed application of this statute confuses personal liability with personal jurisdiction. Whereas personal liability ultimately asks whether the law can place responsibility on the particular party, personal jurisdiction preliminarily asks whether a particular court has the authority to determine the particular party's rights and liability. Courts should be careful to keep these inquiries distinct and ordered.[35] Accordingly, the Court declines JCM's invitation to answer Deterding's threshold question about this Court's jurisdiction to even consider his ultimate liability by effectively considering his liability.

Now, two important questions remain: may the Court properly attribute the alleged Kansas contacts to Deterding personally and, if so, do those contacts equal or exceed the minimum contacts constitutionally required for specific jurisdiction? Deterding correctly reasons that the Court cannot impute Ag Aviation's Kansas contacts to him personally.[36] Incorrectly, however, Deterding imagines that the law outfits his personal conduct on Ag Aviation's behalf with additional jurisdictional protections. As proof, Deterding raises the fiduciary shield doctrine or, rather, an affiliated proposition that this Court noted in a 30-year-old

---

[34] Okla. Stat. Ann. tit. 68, § 1212(c); *see also L'Ggrke v. Asset Plus Corp.*, 2013 WL 3973330, at *2 (N.D. Okla. July 31, 2013) ("[T]ort claims do not constitute a 'debt' that was 'incurred' under the statute.").

[35] *See Hart v. Salois*, 605 F. App'x 694, 700 (10th Cir. 2015), *cert. denied*, 2015 WL 5566345 (U.S. Nov. 30, 2015) ("[W]e have cautioned that 'to hold that one co-conspirator's presence in the forum creates jurisdiction over other, co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability."); *Newsome*, 722 F.3d at 1271 ("Whether or not Newsome can present a legal theory that would hold the individual defendants liable . . . is a question the district court may address on remand. But Newsome, by showing that this lawsuit arises out of the defendants' purposefully directed forum-related activities, has established 'minimum contacts' sufficient to justify exercising personal jurisdiction over the individual defendants.").

[36] *Newsome*, 722 F.3d at 1275 (quoting *Calder*, 465 U.S. at 790) ("Employees' 'contacts with [the forum state] are not to be judged according to their employer's activities there.' ").

decision.[37]   The fiduciary shield doctrine "maintains that even if a particular Kansas employee has substantial contacts with Oklahoma"—or vice versa, as in this case—"those contacts will not count against the employee in the personal jurisdictional analysis so long as the employee acted solely on the corporation's behalf."[38]   What Deterding forgets by invoking this doctrine, however, is that the doctrine "has no necessary connection to the [constitutional] minimum contacts analysis." [39]   Under the constitutional analysis, a defendant's "status as [an employee] does not somehow insulate [that defendant] from jurisdiction;" rather, "[e]ach defendant's contacts with the forum State must be assessed individually."[40]   So if the fiduciary shield doctrine is available at all to Deterding, "it must be a matter of state law—such as 'a judicial rule of construction for interpreting the intended scope of a state's long-arm statute.' "[41]   Deterding offers no authority that would lead the Court to believe that Kansas now recognizes the fiduciary shield doctrine.  Since this Court decided the 30-year-old decision on which Deterding relies, the Court has even interpreted Kansas' long-arm statute to exclude the fiduciary shield doctrine.[42] Deterding, therefore, cannot avoid personal jurisdiction in Kansas on the basis that he acted on Ag Aviation's behalf.

At last, then, the Court considers whether, by "purposeful direction," JCM alleges constitutionally adequate minimum contacts between Deterding and Kansas.   "Purposeful

---

[37] *See Knuth v. Lutheran Church Missouri Synod*, 643 F. Supp. 444, 446 (D. Kan. 1986) ("An individual's actions, solely in the capacity as a corporate officer, does [sic] not create personal jurisdiction over that individual even though the state may have personal jurisdiction over the corporation.").

[38] *Newsome*, 722 F.3d at 1275.

[39] *Id.* at 1276.

[40] *Calder*, 465 U.S. at 790.

[41] *Newsome*, 722 F.3d at 1276 (quoting 3A Fletcher Cyclopedia of the Law of Corporations § 1296.20).

[42] *See Fotouhi*, 2015 WL 3397205, at * 2; *Jarvis v. Stubbs*, 2015 WL 505622, at *4 (D. Kan. Feb. 6, 2015).

direction" entails "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state."[43]   Again, Deterding does not contest that the circumstances alleged meet these criteria.  He has argued only that *he* never *personally* performed any of the acts purposefully directed at Kansas.  But, his unfounded objections aside, the proposed amended complaint attributes conduct to him that enables the Court to believe that he intentionally performed at least one Kansas-aimed act with knowledge that a Kansas-borne injury would follow.  Specifically, the proposed amended complaint enables the Court to believe that, under reckless conditions, Deterding intentionally directed a pilot to spray the Kansas property abutting JCM's acreage and, consequently, caused the misapplication of herbicides to JCM's trees.  This is not a "random, fortuitous, or attenuated contact."[44]   Where the "record contains no suggestion that the individual defendant[] acted unintentionally," the intentional action element "requires little discussion" and is satisfied.[45]   Because Deterding ordered a pilot to operate in Kansas, he made Kansas the "focal point" of the tort.[46]   And where the first two "purposeful direction" elements exist, "it is a fair inference that the individual defendant[] knew that the brunt of any injury to [plaintiff] would be felt in [the forum]."[47]

---

[43] *Newsome*, 722 F.3d at 1264–65 (quotation and quotation marks omitted).

[44] *AST Sports Sci., Inc.*, 514 F.3d at 1057–58 (quoting *Burger King Corp.*, 471 U.S. at 475); *see also Walden*, 134 S. Ct. at 1122 ("physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.").

[45] *Newsome*, 722 F.3d at 1268.

[46] *Calder*, 465 U.S. at 789 ("In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over [the Florida defendants] is therefore proper in California based on the 'effects' of their Florida conduct in California.").

[47] *Newsome*, 722 F.3d at 1269.

Because JCM's proposed amended complaint ties Deterding to Kansas, it also ties up the loose, personal-jurisdiction ends exposed in the original complaint.   Accordingly, the Court disagrees that amendment is futile and that the Due Process Clause spares Deterding from defending himself in Kansas.   JCM must file its amended complaint within 14 days of this Order's date.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend (Doc. 10) is hereby **GRANTED.**  JCM must file its amended complaint within 14 days of this Order.

**IT IS FURTHER ORDERED** that Defendant Andy Deterding's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 3) is hereby **DENIED.**

**IT IS SO ORDERED**.

Dated this 20th day of January 2016.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE